# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANDREW MOUSSEAU and RANDALL WOLFFE, individually and on behalf of all persons similarly situated,<br><br>     Plaintiffs,<br><br>     v.<br><br>ADAM CRUM, in his official capacity as ALASKA COMMISSIONER OF REVENUE, and NIC DEHART, in his official capacity as UNCLAIMED PROPERTY MANAGER, ALASKA DEPARTMENT OF REVENUE, TREASURY DIVISION,<br><br>     Defendants. | Case No. 3:23-cv-00075-SLG |

## ORDER REGARDING MOTION TO DISMISS

Before the Court is a Motion to Dismiss at Docket 18 filed by Defendants Adam Crum and Nic Dehart who have been sued in their official capacity based on their work with the Alaska Department of Revenue ("DOR"). Plaintiffs Andrew Mousseau and Randall Wolffe opposed the motion at Docket 24. Defendants replied at Docket 27. Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

Plaintiffs filed this lawsuit on behalf of themselves and a putative class to

challenge the Alaska Uniform Unclaimed Property Act ("AUUPA")[1] after discovering that the State of Alaska (the "State"), through the DOR, had taken possession of monetary refunds issued to Plaintiffs and held by third-party entities but left unclaimed for several years. The AUUPA establishes a system by which the State may take custody—but not ownership—of unclaimed property being held by an entity or person other than the rightful owner after complying with the statute's procedural requirements.[2] The State then holds the property in trust for the benefit of the rightful owner, who can use the procedures set forth in the statute to claim the property at any time.[3] The AUUPA is based on the Uniform Unclaimed Property Act promulgated by the Uniform Law Commission.[4] At least 38 states have enacted a version of the uniform law, and all 50 states have some unclaimed property law in place.[5]

Plaintiffs do not dispute that the State may take custody of unclaimed

---

[1] AS §§ 34.45.110 – .780.

[2] AS §§ 34.45.280 – .330.

[3] AS §§ 34.45.330, .380.

[4] See AS § 34.45.740 ("[The provisions of this statute] shall be applied and construed so as to effectuate their general purpose to make uniform the law with respect to unclaimed property among states enacting the Uniform Unclaimed Property Act.").

[5] See Prefatory Note to Revised Uniform Unclaimed Property Act (2016) at ¶ 2, nn.1-3; *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff,* 669 F.3d 374, 383 (3d Cir. 2012) (noting that "[a]ll fifty states, and the District of Columbia, have a set of unclaimed property laws").

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 2 of 16
Case 3:23-cv-00075-SLG Document 28 Filed 03/04/24 Page 2 of 16

property.[6] Rather, Plaintiffs assert that the process through which the State gains custody of that unclaimed property is unconstitutional, depriving them, and others like them, of their property without just compensation and adequate due process.[7] They seek a declaration that Defendants' enforcement of the AUUPA constitutes a taking because private property is transferred to and used by the State without an attempt to reunite that property with its owners and that the AUUPA is unconstitutional on its face because it fails to provide adequate notice to property owners about the transfer of their property into the custody of the State.[8] They also bring § 1983 claims against Defendants asserting that pursuant to the AUUPA, Defendants "deprive, and continue to deprive, Plaintiffs and potential class members of their constitutionally protected property interest by seizing, and sometimes selling, property of Plaintiffs and putative class members without providing prior notice . . . [and] without adequate post-deprivation notice, as required by the United States Constitution"[9] and that under the AUUPA "Defendants have . . . unlawfully taken control of and converted to

---

[6] *See Texaco, Inc. v. Short*, 454 U.S. 516, 526 (1982) ("From an early time, this Court has recognized that States have the power to permit unused or abandoned interests in property to revert to another after the passage of time."); *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 241 (1944) (noting that "it is within the constitutional power of the state to protect the interests of depositors from the risks which attend long neglected accounts, by taking them into custody when they have been inactive so long as to be presumptively abandoned").

[7] Doc. 24 at p. 3 ("To be clear, Plaintiffs are not challenging the notion of unclaimed property laws; instead, they seek a system that works.").

[8] Doc.1 at ¶ 78.

[9] Doc. 1 at ¶¶ 83, 90.

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 3 of 16
Case 3:23-cv-00075-SLG   Document 28   Filed 03/04/24   Page 3 of 16

public use the private property of Plaintiffs and putative class members without providing just compensation or providing the notice required by Constitutional Due Process."[10] They seek a return of their property, an injunction prohibiting Defendants from enforcing the AUUPA, and an accounting of property held by the State.

Defendants request that Plaintiffs' complaint be dismissed on two alternative bases. First, they seek dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the Court lacks subject matter jurisdiction because Plaintiffs lack standing. Alternatively, Defendants seek dismissal pursuant to Rule 12(b)(6) for failure to state a plausible constitutional claim.

## LEGAL STANDARDS

A party challenging a district court's subject matter jurisdiction does so pursuant to Federal Rule of Civil Procedure 12(b)(1). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual."[11] In a facial attack, the defendant asserts that the allegations in the complaint, while assumed to be true, are nonetheless "insufficient on their face to invoke federal jurisdiction."[12] In a factual attack, the

---

[10] *Id.* at ¶ 96.

[11] *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[12] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 4 of 16
Case 3:23-cv-00075-SLG   Document 28   Filed 03/04/24   Page 4 of 16

defendant "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[13] No presumption of truth attaches to the allegations, and a court may review extrinsic evidence to evaluate the jurisdictional issues.[14]

Under Rule 12(b)(6), the allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff.[15] To survive under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[16] Dismissal is warranted where the plaintiff fails to present a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory.[17]

## DISCUSSION

### I. The Alaska Uniform Unclaimed Property Act

The AUUPA provides a system for the reporting, collection, maintenance, and use of abandoned property. Property that can be deemed abandoned under the statute includes any intangible amount owed or held by a third-party—

---

[13] *Id.*

[14] *Id.*; *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

[15] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[17] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 5 of 16
Case 3:23-cv-00075-SLG Document 28 Filed 03/04/24 Page 5 of 16

referred to in the statute as the "holder"[18]— that remains unpaid, uncashed, or otherwise showing no owner interaction.[19] It also includes tangible items such as the contents of safe deposit boxes.[20] Property is generally presumed abandoned after three years from the time it has become payable or distributable without any evidence of owner activity.[21] In certain instances, however, the abandonment period is as much as five years[22] or as little as one year.[23] Every year, the holder of property presumed abandoned under the statute must report and deliver that property to the State.[24] Prior to doing so, the holder must send written notices to the last known addresses of the apparent owners of presumably abandoned property valued over $100, advising them that it is in possession of property owed to them.[25] Any unclaimed property must thereafter be delivered to the State, along with the last known address of each person appearing to be the

---

[18] AS § 34.45.760(9).

[19] *See generally* AS §§ 34.45.110 – .260.

[20] AS § 34.45.260.

[21] AS § 34.45.110.

[22] AS § 34.45.200 (providing a five-year abandonment period for stock and other intangible interests in business associations).

[23] AS § 34.45.210 (providing for a one-year period of abandonment for intangible property distributable in the course of a dissolution of a business association); AS § 34.45.230 (providing for a one-year abandonment period for intangible property held for an owner by a public agency); AS § 34.45.250 (providing for a one-year abandonment period for unpaid wages).

[24] AS § 34.45.280, 320(a).

[25] AS § 34.45.280(e).

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 6 of 16
Case 3:23-cv-00075-SLG   Document 28   Filed 03/04/24   Page 6 of 16

owner.[26] Property transferred to the State must include "all interest, dividends, increments, and accretions due, payable, or distributable on the property at the time of filing the report."[27]

Once the State receives the unclaimed property, it "assumes custody and responsibility for the safekeeping of the property."[28] The property delivered to the State by holders remains, in perpetuity, the owners' property. Owners can claim their property from the State at any time without paying a fee.[29] Additionally, if the property "was interest-bearing to the owner on the date of surrender [to the State] by the holder" it will continue to accrue interest that is payable to the owner until claimed by the owner or ten years have elapsed, whichever is shorter.[30]

The State deposits most intangible amounts into the State's general fund.[31] The AUUPA provides a method by which rightful owners can claim their property, and the State maintains a separate, limited trust fund from which it pays out allowed claims.[32] The statute requires the State, acting through the DOR, to notify apparent owners that it has possession of unclaimed property but it gives

---

[26] AS §§ 34.45.280, .320(a).

[27] AS § 34.45.320(a).

[28] AS § 34.45.330(a).

[29] AS § 34.45.380.

[30] AS § 34.45.380(d).

[31] AS § 34.45.370(a).

[32] AS § 34.45.380, .370.

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 7 of 16
Case 3:23-cv-00075-SLG Document 28 Filed 03/04/24 Page 7 of 16

the DOR the discretion to determine "the most cost-effective method available within its appropriations" for such notification.[33] At a minimum, the DOR must maintain a searchable website listing the unclaimed property in its custody along with the names of the apparent owners of such property.[34]

It is through this website that Plaintiffs discovered the State possessed their money. Plaintiff Wolffe asserts he has over $100 held by the State, which originated from an account he had with USAA.[35] Plaintiff Mousseau asserts he has between $25-$50 held by the State, which originated from a lease agreement he had with Weidner Property Management.[36]

## II. Standing

Defendants argue that Plaintiffs cannot establish their standing, which is a requirement for this Court's jurisdiction. They rest their standing argument on the fact that Plaintiffs could readily reclaim their intangible property, which would include any accrued interest earned on that property at the time it was transferred into State custody, and hence they have not suffered any redressable injury.

---

[33] AS § 34.45.310(a).

[34] AS § 34.45.310(b).

[35] Doc. 1 at ¶¶ 16-18.

[36] Doc. 1 at ¶¶ 11-13.

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 8 of 16
Case 3:23-cv-00075-SLG   Document 28   Filed 03/04/24   Page 8 of 16

Article III of the Constitution provides federal courts the jurisdiction to consider only "Cases" and "Controversies."[37] "[S]tanding is an essential and unchanging part of the case-or-controversy requirement."[38] It "ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate."[39] In order to have standing, a plaintiff must show (1) he has suffered an "injury-in-fact"—an injury that is concrete and particularized and actual or imminent, not conjectural; (2) the injury is traceable to the challenged action of the defendant; and (3) the injury is likely to be redressed by a favorable decision.[40] A plaintiff bears the burden of establishing standing.[41] Moreover, in a class action, the named plaintiff is required to allege and show that he has been personally injured, "not that injury has been suffered by other, unidentified members of the class to which they belong."[42]

Plaintiffs allege they were injured when their intangible cash assets were transferred to the State and placed in its general fund for public use without

---

[37] U.S. Const. art. III, § 2, cl.1.

[38] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

[39] *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

[40] *Lujan*, 504 U.S. at 560-61; *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

[41] *Lujan*, 504 U.S. at 561.

[42] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n. 6 (2016).

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 9 of 16
Case 3:23-cv-00075-SLG Document 28 Filed 03/04/24 Page 9 of 16

notice from the State or any attempt at payment. Defendants argue that, even presuming Plaintiffs are in fact the owners of the property being held by the State as alleged in their complaint, no concrete injury is present here.[43] For an injury to be concrete, it must "actually exist."[44] A plaintiff must adequately allege that he has suffered a real and actual harm to a legally protected interest.[45] "The most obvious [concrete injuries] are traditional tangible harms, such as physical harms and monetary harms."[46] Intangible harms, such as those affecting a person's reputation or privacy, can also satisfy the concreteness inquiry.[47] These harms can also include "those specified by the Constitution itself."[48]

There is no such allegation of concrete harm here. Despite the fact that the possessor of Plaintiffs' money has changed, Plaintiffs have not experienced a monetary loss or a constitutional harm to a protected property interest. Under the AUUPA, property transferred from the holder to the State is not conclusively deemed abandoned; rather, it is only presumed to be. The owner retains the ability to rebut that presumption and have it returned to him at any time. The

---

[43] Doc. 27 at pp. 3-4.

[44] *Spokeo*, 578 U.S. at 340.

[45] *Id.* at 339.

[46] *TransUnion LLC v. Ramierz*, 594 U.S. 413, 425 (2021).

[47] *Id.*

[48] *Id.*

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 10 of 16
Case 3:23-cv-00075-SLG Document 28 Filed 03/04/24 Page 10 of 16

State, in possessing the presumably unclaimed property, is substituting itself as the holder of the property, not the owner. Therefore, Plaintiffs' ownership has not been disturbed.

While enforcement of the AUUPA could result in an alleged injury to a person's property in certain circumstances — for example, in the event of a wrongly rejected claim for return of property, failure to pay interest owed under the statute, or the State's liquidation of securities or other property in its custody — Plaintiffs have not alleged such individualized harm. Indeed, any such allegation made by Plaintiffs here would be speculative and unripe; Plaintiffs have not yet filed a claim with the DOR for return of their property, and therefore the State has not made any determination that could constitute a deprivation or diminishment of that property.[49]

Plaintiffs cite *Taylor v. Westly* ("*Taylor II*")[50] for the proposition that a property owner demonstrates a concrete injury whenever the State "disturbs" a person's property and thus the mere transfer of their property to the State without attempt at payment or prior notice is sufficient "injury-in-fact" to support their

---

[49] "Standing and ripeness under Article III are closely related." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009). A ripeness inquiry generally "coincides squarely with standing's injury in fact prong." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)).

[50] 488 F.3d 1197 (9th Cir. 2007) ("*Taylor II*").

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 11 of 16
Case 3:23-cv-00075-SLG  Document 28  Filed 03/04/24  Page 11 of 16

constitutional claims.[51]  *Taylor II* involved a challenge to California's unclaimed property law.  Like the AUUPA, California's statute provided for a system in which property presumed abandoned after a few years of inactivity is transferred to the state for safeguarding.[52]  The plaintiffs in that case had each owned shares of company stock based on their employment and pension programs with those companies.[53]  The plaintiffs were fully aware of their investments and did not intend to abandon them.[54]  Their stocks were nonetheless presumed abandoned under the statute because three years had passed without any record of them cashing dividend checks, responding to proxy notices, or otherwise communicating with the companies.[55]  Under California's law, the transfer of the stock to the state triggered an immediate sale of the stock by the state.[56]  The

---

[51] Their reliance on the word "disturb" is taken from a portion of the Ninth Circuit's opinion addressing the issue of injunctive relief where the court said that due process requires the government to provide reasonable notice "[b]efore the government may *disturb a person's ownership* of his property."  *Id.* at 1201 (emphasis added).

[52] *See Taylor v. Westly*, 402 F.3d 924, 930-31 (9th Cir. 2005) ("*Taylor I*").  *Taylor I* was the first Ninth Circuit decision related to California's unclaimed property statute.  In *Taylor I*, the Ninth Circuit concluded that the Eleventh Amendment did not bar the plaintiffs from seeking to recover the value of their stock from the state, "because the funds they seek are held by the state as custodian in trust for them rather than as the state's own funds . . . ."

[53] *Taylor I*, 402 F.3d at 927.

[54] *Id.*

[55] *Id.* at 926-27.

[56] California's unclaimed property statute required the state, through its Controller, to sell stocks in its possession within two years on an established exchange at prevailing prices.  *Taylor v. Westly*, Case no. CIV-S-01-2407-WBS-GGH, 2005 WL 5480286, at *1 (E.D. Cal. Aug. 16, 2005).  It was established that the Controller had a policy of selling stocks immediately upon transfer. *Taylor II*, 488 F.3d at 1200.

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 12 of 16
Case 3:23-cv-00075-SLG   Document 28   Filed 03/04/24   Page 12 of 16

stock owners retained the right to claim the net proceeds from the sale of the stock from the state, but the plaintiffs alleged that the premature sale deprived them of any future value of their stock. Indeed, one of the plaintiffs alleged that he had missed out on subsequent stock splits and appreciation that cost him millions of dollars and another plaintiff alleged her stock had lost all value because California determined her shares were "permanently misplaced and unpayable."[57] Given these facts, on appeal of the district court's order denying a preliminary injunction, the Ninth Circuit reversed and held that the plaintiffs had standing because "[the] plaintiffs' securities have been lost to escheat, thus establishing concrete injury."[58]

*Taylor II* is distinguishable from the situation here. The sale of the plaintiffs' stock in *Taylor II* created sufficient concrete harm to support the plaintiffs' standing. The Ninth Circuit relied on the fact that the plaintiffs had suffered a permanent loss of property and found that recurrence was likely under the statute unless the plaintiffs made costly and timely efforts to keep such assets active. The Court further noted that even with such extra efforts, the permanent loss of stocks was likely to reoccur due to California's policy of

---

[57] *Taylor I*, 402 F.3d at 929, 936.

[58] *Taylor II*, 488 F.3d at 1199.

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 13 of 16
Case 3:23-cv-00075-SLG   Document 28   Filed 03/04/24   Page 13 of 16

immediately selling stock upon transfer to the state.[59] These facts are not present here. The only property disturbance at issue here is a change in the custody of Plaintiffs' property, not its value or ownership. The Ninth Circuit did not hold in *Taylor II* that the mere change in the custodian of cash assets, without more, is a sufficient "injury-in-fact" to confer standing.

Plaintiffs assert that pursuant to *Knick v. Township of Scott* they do not need to file a claim for a return of their property and wait for some concrete deprivation to occur before raising a takings challenge.[60] Again, however, a takings challenge arises when the government takes property for public use without paying for it. Here, the State has not taken Plaintiffs' property in the same manner. Under the AUUPA, while the State can use funds transferred to it for public purposes, it is nonetheless required to keep funds available to pay out any verified claims on property transferred to it. The State does not take ownership of the property or diminish its value by only taking custody of it. As noted by the State in its briefing, the application of the AUUPA is therefore "fundamentally different from a property owner, as was the case in *Knick*, being forced to make the grounds around her home open to the public during daylight

---

[59] *Id.* at 1199-200.

[60] *Knick v. Twp. of Scott*, 139 S.Ct. 2162, 2170-71 (2019) ("The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his [takings claim].").

Case No. 3:23-cv-00075-SLG, *Mousseau et al. v. Crum et al.*
Order Re Motion to Dismiss
Page 14 of 16
Case 3:23-cv-00075-SLG   Document 28   Filed 03/04/24   Page 14 of 16

hours."[61]

Plaintiffs also argue that it "defies common sense" to deny them standing because such a decision "immunizes the [AUUPA] from constitutional challenges."[62] They want to challenge not just the transfer of custody to the State, but also the statute's notice requirements; they assert that they will never be able to do so unless the lack of direct notice from the State at the time of the transfer in and of itself is deemed a sufficient injury. The Court disagrees. There could be a situation where a plaintiff has standing to challenge the process provided by the AUUPA, but that is simply not the case here where there has been no deprivation of property associated with the statute's allegedly deficient process. As noted above, Plaintiffs' complaint does not involve a denial of a claim, the sale of securities, or the nonpayment of interest; it alleges only a transfer of cash assets to the State without notice to Plaintiffs. Plaintiffs have not alleged that this mere transfer of their assets from the holders to the State caused any devaluation of those funds or diminishment of their ownership rights that they could have defended against if given prior notice. Indeed, there is no allegation that they even knew about the money owed to them before the State took custody; consequently, the State, through its application of the AUUPA,

---

[61] Doc. 27 at p. 4.

[62] Doc. 24 at p. 11.

facilitated Plaintiffs' discovery of money that they were unaware of, lost, or forgot about. There is simply no concrete harm alleged by Plaintiffs to generate the requisite case or controversy needed for jurisdiction.

## CONCLUSION

Based on the foregoing discussion, Defendants motion to dismiss at Docket 18 is GRANTED.

DATED this 4th day of March 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE
